## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **Teresa Pew** <br> Plaintiff, <br><br> v. <br><br> **Smiths Medical and ICU Medical Sales, Inc.**, <br> Defendants. | ) **Case No.** 22-cv-7173 <br> ) <br> ) **Jury Trial Demanded** <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

1.     Plaintiff Teresa Pew complains against Smiths Medical ("Smiths") and ICU Medical Sales, Inc. ("ICU") (collectively, "Defendants") as follows:

### NATURE OF THE ACTION

2.     Smiths, a medical device manufacturing and sales company, paid Plaintiff Teresa Pew and other older females significantly less than several of her younger and / or male peers because Smiths' Vascular Division had embarked on a campaign to recruit and promote young, attractive people to sell their medical devices while seeking to rid themselves of older, female sales employees like Plaintiff. Indeed, Plaintiff's Manager Tim Burress told Ms. Pew that a member of Smiths' senior leadership ordered him to get rid of Plaintiff as his first order of business.

3.     As compared to her younger and / or male peers, Ms. Pew was paid significantly less in base compensation and commissions by Smiths.

4.     As part of the Vascular Division's campaign to push out older, female sales employees, Smiths placed Plaintiff and other older females on a less lucrative "B" track. Smiths gave Plaintiff fewer opportunities to earn commissions, assigned her a worse sales territory, and denied her promotion opportunities while simultaneously recruiting young and / or male employees and fast-tracking the recruits' promotions. This way, Smiths' preferred workers would stay at Smiths while older workers like Plaintiff would resign or be forced out.

5.     In fact, Ms. Pew's manager acknowledged that Smiths owed her a market correction for her base pay, but when he sought to correct it, a member of senior leadership refused.

6.     Finally, Smiths retaliated against Ms. Pew for being a squeaky wheel. Smiths' only response to her complaints was to continue marginalizing Ms. Pew and ultimately terminating her employment when she refused to resign or stop complaining.

7.     Ultimately, Smiths — now ICU — paid Ms. Pew less than her peers in violation of the Illinois Equal Pay Act, 820 ILCS 112/10 *et seq.* ("IL EPA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000*e*, *et seq.* ("Title VII"); the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* ("IHRA"); and the Age Discrimination in Employment Act, 29 U.S.C. § 623, ("ADEA"). Smiths further engaged in gender and age discrimination by subjecting Ms. Pew to different terms and conditions of employment, failing to promote her, putting her on a PIP, and terminating her employment in violation of Title VII, the IHRA, and the ADEA.

8.     Smiths also intentionally retaliated against Ms. Pew for complaining of discrimination and retaliation against her and her co-worker, in further violation of the IL EPA, Title VII, the IHRA, and the ADEA. After she complained Smiths continued to discriminate by refusing to promote her, refusing to adjust her pay, disciplining her, and terminating her employment.

**THE PARTIES**

9.     Plaintiff Teresa Pew is a former employee of Smiths and worked most recently as an Account Manager selling medical devices to various medical providers in the Chicago area. At all relevant times, she resided in Illinois.

10.     At all relevant times, Ms. Pew was over the age of fifty.

11.     Defendant Smiths is Plaintiff's former employer and paid Ms. Pew. Smiths was a corporation and citizen of Delaware. Defendant Smiths conducts business from Illinois.

12.    Smiths participated in the EEOC investigation.

13.    Upon information and belief, during the EEOC investigation, Defendant ICU Medical Sales, Inc. acquired Smiths. This acquisition was completed on January 6, 2022.

14.    Per ICU's website, "Smiths Medical is now part of ICU Medical."[1]

15.    Defendant ICU is a corporation and citizen of Delaware and conducts business from Illinois.

16.    At all relevant times, each of the Defendants employed at least 300 employees.

**JURISDICTION AND VENUE**

17.    Jurisdiction is proper in this Court because several of the claims are premised on federal statutes.

18.    This Court has supplemental jurisdiction over the state law claims because they stem from the same underlying occurrences as Plaintiff's federal claims. 28 U.S.C. § 1367.

19.    Venue is proper in this Court because the events giving rise to this claim occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

20.    Defendants are subject to this Court's jurisdiction because they conduct business in Illinois, the employment practices alleged to be unlawful were committed within the Northern District of Illinois, and Defendants maintained Plaintiff's employment records here.

21.    On or about March 13, 2019, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and cross-filed with the Illinois Department of Human Rights, alleging Smiths subjected her to discrimination because of her sex and age, and retaliation because she complained of the discrimination.

22.    On September 21, 2022, the EEOC issued Ms. Pew a notice of right to sue letter.

---

[1]    https://www.icumed.com/ as of December 16, 2022.

23.     Accordingly, Plaintiff has exhausted her administrative remedies.

## FACTS RELEVANT TO ALL CLAIMS

24.     At the time of Smiths' unlawful termination of Plaintiff Teresa Pew's employment, Ms. Pew had almost twenty years of experience in medical sales. She has managed multi-million dollar territories spanning up to sixteen states and sold millions of dollars of medical equipment. Ms. Pew was adept at bringing in business from large medical providers. For example, she won a contract valued at $500,000 with Trinity, a conglomerate of over 80 hospitals.

25.     In March of 2006, Smiths hired Ms. Pew to work as a Critical Care Account Manager, an entry-level position. In 2013, Ms. Pew became an Account Manager for Smiths' Vascular Division. This was a lateral transfer to another entry-level sales position.

26.     Plaintiff's job duties included selling vascular medical products to hospitals and other medical providers.

27.     Smiths never promoted Ms. Pew from her entry-level positions.

28.     Throughout her twelve years of employment with Smiths, Plaintiff was a dedicated, successful, and loyal employee. She was consistently recognized by the medical providers she sold devices to as a competent, reliable, and capable saleswoman, and she brought in hundreds of thousands of dollars in sales to Smiths.

**Smiths engaged in discriminatory and discretionary pay practices.**

29.     Smiths compensated sales employees with a combination of base salary and commissions. Commissions were paid to employees who met or exceeded "sales targets." Sales targets were based on the percentage of increased growth in sales over the previous year in employees' assigned territories.[2] Commissions comprised the bulk of most employees' income.

---

[2] If there is an inherited loss from a prior year, the entire inherited loss must be compensated for in addition to meeting the sales target. For example, if the target is $6,000 in sales but the inherited

30.     At the time of her unlawful termination, Ms. Pew's base compensation was approximately $60,000, which was significantly less than her younger and / or male peers who did similar work, many of whom were less experienced.

31.     Smiths also paid Ms. Pew less commission than her younger and/or male peers who did similar work, many of whom were less experienced. The bulk of Ms. Pew's income, especially in the last years of her employment, did not come from commissions. Smiths paid Ms. Pew $120,008 in 2017 and $54,946 in 2018.

32.     Two of Ms. Pew's managers, Bob DeLeon (the Area Vice President of Sales over the Western Division and subsequently, the Vice President of Sales North America) and Tara Landgraf (the Director of Sales for U.S. Vascular Access), had vast control and discretion over several factors that affected whether sales employees would be set up to earn large or small commissions. First, some sales territories were more lucrative than others. Second, if a territory had losses instead of growth, it was less likely an employee could meet sales targets to qualify for commission for one to two years. Third, if the territory had a history of growth in sales, it was more likely that the sales employee would meet targets and earn commissions.

33.     In addition to controlling territory assignments, leaders like DeLeon and Landgraf also had discretion about whether or how to factor a territory's "losses" into a sales employee's commission calculation, especially if the losses were the responsibility of a different employee or there were extenuating circumstances. One way to reduce the impact of "losses" was to remove the account with losses from the territory so the loss would not negatively impact the sales target. A second way was to manipulate and reduce the sales target so commission could be earned.

34.     Similarly, DeLeon and Landgraf had broad discretion to determine whether a sales

---

loss is $10,000, the employee must bring in $16,000 to be eligible for commission. An inherited loss can stay on the books for 1 to 2 years.

employee's successful sales should factor into commission payments, especially when the sales employee left the territory a result of a reorganization or territory realignment. Ms. Pew was the subject of a reorganization/territory realignment.

35.     Ms. Pew had a track record of high sales in lucrative territories such as Chicago and routinely requested that Smiths assign her to Chicago because she had longstanding relationships with medical providers, including Northwestern. Smiths, however, consistently assigned Ms. Pew to territories with less growth and where the sales employee she replaced *lost* sales. Smiths' assignments made it more difficult for Ms. Pew to achieve the growth necessary to hit her sales targets and be eligible for commissions.

36.     In contrast, Smiths assigned younger and / or male sales professionals with significantly less experience than Ms. Pew to more lucrative sales territories with fewer losses. By doing so, Smiths guaranteed that its younger and / or male sales professionals received higher compensation than Ms. Pew.

37.     In addition, during the relevant time period, Smiths refused Ms. Pew's repeated requests for Smiths to level the playing field so that she could earn commissions similar to commissions earned by younger and / or male employees. Smiths denied her requests to not factor in losses incurred by other employees and also denied her requests to credit her for wins she had before a territory was assigned to a younger employee. Instead, her wins were factored into the commission calculations for younger and / or male employees. As an example, Plaintiff brought in a half-million dollars' worth of business from Trinity hospital, but Smiths refused to have that "win" factored into her commission payments and factored it into the sales targets for younger and / or male employees.

**Biased leaders oversaw the Vascular Division where Ms. Pew worked.**

38.     In the summer of 2017, Smiths hired Tim Burress to be Regional Business Manager, and Ms. Pew began reporting to Burress.

39.     Burress reported to Tara Landgraf, Director of Sales for U.S. Vascular Access. Landgraf is more than twenty years younger than Ms. Pew.

40.     During the relevant time period, Landgraf reported to Bob DeLeon, Area Vice President of Sales over the Western Division and later, Vice President of Sales North America.

41.     Ms. Pew experienced firsthand Landgraf's animus toward older, female employees. Landgraf asked Ms. Pew if she was the same age another female employee who was in her 50's, and asked Ms. Pew when she was going to retire.

42.     As another example of animus, in 2017, a different employee confided to Ms. Pew that "they," in reference to Landgraf and DeLeon, directed him to "manage" Ms. Pew "out" and told Ms. Pew to keep a low profile.

43.     As yet another example, Burress confided to Ms. Pew that Landgraf told him his first order of business was to get rid of her. Unfortunately, Ms. Pew did not learn about this until Smiths unlawfully terminated her employment.

44.     Notably, for years prior to Smiths promoting Landgraf, Ms. Pew had raised numerous complaints to Landgraf that Smiths was underpaying her and that it was discriminatory.

45.     It became evident to Ms. Pew that Landgraf was frustrated by Ms. Pew's persistence.

**Smiths denied Ms. Pew promotions and she complained to Smiths' management of illegal activity.**

46.     After Landgraf's promotion in 2017, Ms. Pew noticed that DeLeon and Landgraf were increasingly committed to pushing out older females and to finding young — and inexperienced — recruits to work in their Vascular Division.

47.     Despite Plaintiff's tenure with the Company and history of success, Smiths refused to promote Ms. Pew. For example, in 2017, Smiths' Director of Training asked that Ms. Pew be promoted to Field Sales Trainer, which would have resulted in extra pay. There was no apparent downside, and it was unusual to deny the Director's requests, but Landgraf and DeLeon vetoed Ms. Pew's promotion. Although Smiths denied the promotion, Smiths still asked Ms. Pew to train employees because of her specific product knowledge; she just was not given extra compensation.

48.     Soon after the promotion denial, Ms. Pew complained to Landgraf that Smiths was underpaying her and interfering with her career advancement. Ms. Pew complained that Smiths exercised its discretion to remove losses and award wins for younger and / or male employees so they could earn higher commissions, but refused to do so for her, and gave specific examples.

49.     In response to the complaint, Landgraf hugged Ms. Pew and told her it was not her, it was being "defined for" Landgraf, which Plaintiff interpreted to mean that DeLeon was directing Landgraf to "manage out" Plaintiff.

**Smiths knew it was underpaying Ms. Pew, yet it paid younger and less experienced employees more compensation than Ms. Pew.**

50.     In the summer of 2017, Landgraf found Shannon Judd on social media and recruited her to work at Smiths. At the time, Judd was in her mid-20's, had no experience in medical sales, and minimal work experience. Judd is almost thirty years younger than Ms. Pew.

51.     Upon information and belief, the Company paid Judd a higher base salary for the same position that Ms. Pew held, even though Plaintiff had more than fifteen years of experience in medical sales and had worked at Smiths for more than a decade.

52.     In late 2017 and early 2018, Ms. Pew complained to Burress that her base pay was below market. Burress eventually told Ms. Pew that he spoke with another manager who agreed that a market correction was necessary. Burress later told Ms. Pew that he requested an increase

in her pay; however, Burress reported his request was denied by DeLeon and Landgraf.

53.     In early 2018, Ms. Pew complained to a different Regional Business Manager that DeLeon and Landgraf were discriminating against her.

54.     In January 2018, Plaintiff complained to Burress that Smiths (1) gave her inaccurate territory numbers which deflated her pay; (2) refused to give her credit for prior wins that should carry over; and (3) was assigning her wins to a younger employee.

55.     Also in early 2018, Ms. Pew complained that Landgraf had assigned losses to her even though Landgraf had previously agreed in writing *not* to assign these losses to Plaintiff. Ms. Pew also reiterated that it was Smiths' practice to forgive losses for younger and male employees.

56.     In March of 2018, Landgraf officially reneged on her promise to not factor losses into Ms. Pew's commission payments even though Ms. Pew was not responsible for the losses. This resulted in less commission pay to Ms. Pew in 2017 and 2018.

57.     On several occasions in 2017 and 2018, Burress and Landgraf told Ms. Pew that she should not ask her co-workers about their pay. Landgraf told Ms. Pew she was not allowed to discuss pay with others or to ask her peers about their compensation.

**Smiths again promoted young employees over the more experienced Ms. Pew.**

58.     Again in 2018, Plaintiff requested to be a trainer and Smiths denied her request.

59.     Despite the fact that Ms. Pew held the Account Manager position for five years and had worked with Smiths for a dozen years since 2006, Smiths never promoted Ms. Pew to a higher-level position.

60.     Smiths did, however, promote younger and / or male peers who held the Account Manager position for less time than Ms. Pew.

61.     While denying Ms. Pew's promotions, Smiths forged ahead with promoting

younger and / or male employees.

62.     In 2018, Smith promoted Judd and another a female in her 30s to be Field Sales Trainers and promoted a young female to Senior Account Manager.

63.     In 2019, Smiths promoted a male employee in his thirties to be a Regional Business Manager.

64.     In 2020, Smiths promoted another young male to be a Global Product Marketing Manager.

**After Ms. Pew continued to raise complaints in 2018 of discriminatory employment practices, Smiths retaliated against her.**

65.     Several times in 2018, Ms. Pew complained to Burress and Landgraf that Smiths was discriminating against a specific sales employee in her 50s because of the woman's age and gender. For context, this employee was a longtime Smiths employee who took a pay promotion to a non-sales job at Smiths and then transferred back to sales in the Vascular Division in March of 2018. When Ms. Pew learned that Smiths cut the employee's pay upon her return to sales, she complained that this was more proof of pay discrimination: two male employees returned to sales from non-sales jobs, and Smiths allowed them to keep their prior, and higher, salaries.

66.     In February and March of 2018, Smiths encouraged its sales employees to establish Sales Incentive Agreements with top accounts. Ms. Pew made several proposals that were stymied, whereas a young employee's tardy proposals were approved.

67.     In the summer of 2018, Ms. Pew complained to Burress that Smiths was discriminating by paying Judd more and by giving Judd more opportunities to earn commissions.

68.     A month later, in July of 2018, Burress told Plaintiff she would be put on a Performance Improvement Plan ("PIP"). Ms. Pew complained that this was discriminatory and retaliatory, especially in light of her recent complaints.

69.     On August 21, 2018, Burress, at Landgraf's direction, put Plaintiff on a PIP. The PIP contained many factual inaccuracies and analyzed several years of her performance. Plaintiff submitted extensive documentation to rebut the inaccuracies, to no avail.

70.     Ms. Pew again complained to Burress of discrimination and retaliation, stating that the PIP was yet another example of discrimination and retaliation.

71.     Less than a week after Ms. Pew's latest complaint, on August 28, 2018, Smiths terminated Ms. Pew's employment, ostensibly for cause.

72.     Danica Purpur, a female in her 20s, was offered Plaintiff's position but declined it.

73.     Plaintiff is not aware of Defendants investigating any of her complaints during her tenure with Smiths.

74.     Upon information and belief, at least two other individuals have filed EEOC Charges of Discrimination against Smiths (and ICU) for discriminatory and retaliatory employment practices by the same actors in Smiths' Vascular Division.

**COUNT I: VIOLATION OF ILLINOIS EQUAL PAY ACT**
**Pay Discrimination**
**820 ILC 112**

75.     Plaintiff incorporates and realleges all the allegations above as though fully stated herein.

76.     The Illinois Equal Pay Act prohibits employers from discriminating against employees on the basis of sex by paying employees of one sex wages at a rate less than the rate at which the employers pay employees of the opposite sex. 820 ILCS 112/10.

77.     At all relevant times, Defendants were employers within the meaning of the Act and Ms. Pew was an employee within the meaning of the Act.

78.     Defendants employed more than one employee in the State of Illinois.

79.     Plaintiff is a member of a protected class on the basis of her sex (female).

80. Smiths violated the IL EPA by treating Ms. Pew differently based on her gender by not paying her at an equal rate to that of her similarly situated coworkers who are men.

81. Plaintiff's male comparators performed "substantially similar work on jobs the performance of which requires substantially similar skill, effort, and responsibility, and which are performed under similar working conditions." 820 ILCS 112/10(a).

82. Smiths paid Plaintiff a base compensation rate lower than the rate paid to several of Ms. Pew's male comparators.

83. Smiths also paid Ms. Pew smaller commissions than the commissions it paid to Ms. Pew's male comparators.

84. Smiths gave Ms. Pew smaller raises than her male comparators.

85. Smiths denied Ms. Pew's promotion opportunities and opportunities to serve as a trainer, which further expanded the pay gap between Ms. Pew's and her male comparators.

86. Smiths also assigned Ms. Pew worse territories and sought to marginalize her so she would fail and not earn commissions.

87. Defendants gave more lucrative job assignments, better base salaries, better commissions, and better job territories to male employees than it did to Plaintiff.

88. Smiths was aware that a market correction was necessary for Ms. Pew's base compensation because Mr. Burress acknowledged the issue and asked management to fix it, but Landgraf and DeLeon refused to correct it.

89. Smiths also knew about its discriminatory pay practices because Ms. Pew complained to Smiths that it was engaging in sex discrimination against her peer, an older female, by paying her peer a lower pay than their male comparators.

90.     Smiths knew or should have been aware that its conduct would cause Ms. Pew severe emotional distress.

91.     As a result of Defendants' discriminatory actions, Plaintiff has suffered and will continue to suffer irreparable injury including, but not limited to: lost earnings and benefits, mental anguish, and emotional distress.

## COUNT II: VIOLATION OF TITLE VII
### Sex Discrimination
### 42 U.S.C. § 2000e-2(a)

92.     Plaintiff reincorporates and re-alleges the preceding paragraphs as if fully set forth herein.

93.     Title VII prohibits employers from discriminating against employees with respect to compensation, terms, conditions, benefits, or privileges of employment based on sex. 42 U.S.C. § 2000e-2(a).

94.     Title VII further prohibits employers from discriminating on the basis of an employee's sex by terminating an individual's employment. 42 U.S.C. § 2000e-2(a).

95.     At all relevant times, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of Title VII. 42 U.S.C. § 2000e(b).

96.     At all relevant times, Defendants employed 15 or more employees.

97.     Plaintiff is a member of a protected class on the basis of her sex (female).

98.     Plaintiff was qualified for her job; she possessed the necessary skills and professional experience to perform her role and not only met but exceeded the expectations of her role.

99.     Smiths gave Ms. Pew smaller raises than her male comparators.

100.    Smiths also assigned Ms. Pew worse territories and sought to marginalize her so she would fail and not earn commissions.

101. Plaintiff was denied the equal compensation, terms, conditions, benefits, or privileges of employment because of her sex. Plaintiff was treated differently, and worse, than her similarly situated male colleagues. Specifically, she was paid at a lower base compensation rate, smaller commissions, and smaller raises.

102. Defendants gave more lucrative job assignments, better base salaries, better commissions, and better job territories to younger employees than it did to Plaintiff.

103. Smiths denied Ms. Pew's promotion opportunities and opportunities to serve as a trainer, which further expanded the pay gap between Ms. Pew's and her male comparators.

104. Smiths was aware that a market correction was necessary for Ms. Pew's base compensation because Mr. Burress acknowledged the issue and asked management to fix it, but Landgraf and DeLeon refused to correct it.

105. Smiths also knew about its discriminatory pay practices because Ms. Pew complained to Smiths that it was engaging in sex discrimination against her peer, an older female, by paying her peer a lower pay than male comparators.

106. Smiths also assigned Ms. Pew worse territories and sought to marginalize her so she would fail and not earn commissions.

107. Smiths engaged in further discrimination by unfairly disciplining and ultimately terminating Ms. Pew's employment of for pretextual reasons.

108. Defendants' actions were intentional, willful, malicious and done with reckless disregard for Plaintiff's federally protected rights under Title VII.

109. As a result of Defendants' discriminatory actions, Plaintiff has suffered and will continue to suffer irreparable injury including, but not limited to: lost earnings and benefits, mental anguish, and emotional distress.

14

## COUNT III: VIOLATION OF IHRA
### Sex Discrimination
### 775 ILCS 5/2-102(A)

110.    Plaintiff reincorporates and re-alleges the preceding paragraphs as if fully set forth herein.

111.    The IHRA prohibits the discrimination of any individual on the basis of sex in connection with that individual's employment. *See* 775 ILCS 5/2-102(A).

112.    At all relevant times, Defendants were employers within the meaning of the Act and Ms. Pew was an employee within the meaning of the Act.

113.    Defendants employed more than one employee in the State of Illinois.

114.    Plaintiff is a member of a protected class on the basis of her sex (female).

115.    Plaintiff was qualified for her job; she possessed the necessary skills and professional experience to perform her role and not only met but exceeded the expectations of her role.

116.    Plaintiff was denied the equal terms, conditions, benefits, or privileges of employment because of her sex. Plaintiff was treated differently, and worse, than her similarly situated male colleagues. Specifically, she was paid at a lower base compensation rate, smaller commissions, and smaller raises.

117.    Smiths denied Ms. Pew's promotion opportunities and opportunities to serve as a trainer, which further expanded the pay gap between Ms. Pew's and her male comparators.

118.    Defendants gave more lucrative job assignments, better base salaries, better commissions, and better job territories to male employees than it did to Plaintiff.

119. Smiths was aware that a market correction was necessary for Ms. Pew's base compensation because Mr. Burress acknowledged the issue and asked management to fix it, but Landgraf and DeLeon refused to correct it.

120. Smiths also knew about its discriminatory pay practices because Ms. Pew explained that her older female peer's low pay was yet another example of sex discrimination.

121. Smiths also assigned Ms. Pew worse territories and sought to marginalize her so she would fail and not earn commissions.

122. Smiths engaged in further discrimination by unfairly disciplining and ultimately terminating the employment of Ms. Pew for pretextual reasons.

123. Defendants' actions were intentional, willful, malicious, and done with reckless disregard for Plaintiff's protected rights under the IHRA.

124. Defendants knew or should have known of the IHRA and the obligations and duties it imposes.

125. As a result of Defendants' discriminatory actions, Plaintiff has suffered and will continue to suffer irreparable injury including, but not limited to: lost earnings and benefits, mental anguish, and emotional distress.

<div align="center">

**COUNT IV: VIOLATION OF ADEA**
**Age Discrimination**
**29 U.S.C. § 623**

</div>

126. Plaintiff reincorporates and re-alleges the preceding paragraphs as if fully set forth herein.

127. The ADEA prohibits employers from discriminating on the basis of age with respect to compensation, terms, conditions, or privileges of employment. 29 U.S.C. § 623(a)(1).

128. The ADEA further prohibits discharging any individual because of such individual's age. 29 U.S.C. § 623(a)(1).

129.    At all relevant times, Defendants were employers within the meaning of the Act and Ms. Pew was an employee within the meaning of the Act.

130.    Defendants employed more than 20 employees and they were engaged in interstate commerce.

131.    Plaintiff was over the age of 50 during the relevant time of her employment with Defendants.

132.    Plaintiff was denied equal compensation, terms, conditions, benefits, or privileges of employment because of her age. Plaintiff was treated differently, and worse, than her similarly situated younger colleagues. Specifically, she was paid at a lower base compensation rate, smaller commissions, and smaller raises.

133.    Defendants gave more lucrative job assignments, better base salaries, better commissions, and better job territories to younger employees than it did to Plaintiff.

134.    Smiths denied Ms. Pew opportunities for promotion and to serve as a trainer, which further expanded the gap between Ms. Pew's pay and the pay of her younger comparators.

135.    Smiths was aware that a market correction was necessary for Ms. Pew's base compensation because Mr. Burress acknowledged the issue and asked management to fix it, but Landgraf and DeLeon refused to correct it.

136.    Smiths also knew about its discriminatory pay practices because Ms. Pew explained that her older female peer's low pay was yet another example of sex discrimination.

137.    Smiths also assigned Ms. Pew worse territories and sought to marginalize her so she would fail and not earn commissions.

138.    Smiths engaged in further discrimination by unfairly disciplining and ultimately terminating the employment of Ms. Pew for pretextual reasons.

139.     The reason that Defendants provided for giving Ms. Pew worse job assignments, lower base salary, lower commissions, worse job territories, and terminating Plaintiff were pretext for age discrimination.

140.     Defendants would not have taken these actions against Plaintiff but for her age.

141.     Defendants' wrongful conduct was malicious, and willful in that Defendants knew or should have known that the ADEA prohibits such conduct.

142.     As a result of Defendants' discriminatory actions, Plaintiff has suffered and will continue to suffer irreparable injury including, but not limited to lost earnings and benefits, pain and suffering, mental anguish, and emotional distress.

## COUNT V: VIOLATION OF IHRA
### Age Discrimination
### 775 ILCS 5/2-102

143.     Plaintiff reincorporates and re-alleges the preceding paragraphs as if fully set forth herein.

144.     The IHRA prohibits employers from discriminating on the basis of age. 775 ILCS 5/2-102.

145.     At all relevant times, Defendants were employers within the meaning of the Act and Ms. Pew was an employee within the meaning of the Act.

146.     Defendants employed more than one employee in the State of Illinois.

147.     Plaintiff was over the age of 50 during the relevant time of her employment with Defendants.

148.     Plaintiff was denied equal compensation, terms, conditions, benefits, or privileges of employment because of her age. Plaintiff was treated differently, and worse, than her similarly situated younger colleagues. Specifically, she was paid at a lower base compensation rate, smaller commissions, and smaller raises.

149.    Defendants gave more lucrative job assignments, better base salaries, better commissions, and better job territories to younger employees than it did to Plaintiff.

150.    Smiths denied Ms. Pew opportunities for promotion and to serve as a trainer, which further expanded the gap between Ms. Pew's pay and the pay of her younger comparators.

151.    Smiths was aware that a market correction was necessary for Ms. Pew's base compensation because Mr. Burress acknowledged the issue and asked management to fix it, but Landgraf and DeLeon refused to correct it.

152.    Smiths also knew about its discriminatory pay practices because Ms. Pew explained that her older female peer's low pay was yet another example of sex discrimination.

153.    Smiths also assigned Ms. Pew worse territories and sought to marginalize her so she would fail and not earn commissions.

154.    Smiths engaged in further discrimination by unfairly disciplining and ultimately terminating the employment of Ms. Pew for pretextual reasons.

155.    The reason that Defendants provided for giving Ms. Pew worse job assignments, lower base salary, lower commissions, worse job territories, and terminating Plaintiff were pretext for age discrimination.

156.    Defendants would not have taken these actions against Plaintiff but for her age.

157.    Defendants' wrongful conduct was malicious and willful in that Defendants knew or should have known that the IHRA prohibits such conduct.

158.    As a result of Defendants' discriminatory actions, Plaintiff has suffered and will continue to suffer irreparable injury including, but not limited to lost earnings and benefits, pain and suffering, mental anguish, and emotional distress.

**COUNT VI: VIOLATION OF ILLINOIS EQUAL PAY ACT**
**Interference and Retaliation**

**820 ILC 112**

159.    Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

160.    At all relevant times, Defendants were employers within the meaning of the Act and Ms. Pew was an employee within the meaning of the Act.

161.    Defendants employed more than one employee in the State of Illinois.

162.    Plaintiff is a member of a protected class on the basis of her sex (female).

163.    The IL EPA provides that "It is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this Act." 820 ILCS 112/10(b).

164.    Ms. Pew complained on several occasions that she was being undercompensated with respect to base pay and commissions as compared to her male peers. She even filed a complaint on behalf of her peer, an older female saleswoman, that Smiths was underpaying her peer because of her peer's sex.

165.    The IL EPA provides that "It is unlawful for any employer to discharge or in any other manner discriminate against any individual for inquiring about, disclosing, comparing, or otherwise discussing the employee's wages or the wages of any other employee, or aiding or encouraging any person to exercise his or her rights under the Act." *Id.*

166.    The IL EPA also states: "Any employer . . . who knowingly discharges or in any other manner knowingly discriminates against any employee because that employee has made a complaint to his or her employer . . . that he or she or any employee of the employer has not been paid in accordance with the provisions of this Act . . . shall be liable to the employee for such legal and equitable relief as may be appropriate to effectuate the purposes of this Section." 820 ILCS 112/35.

167.     Landgraf and Burress interfered with Ms. Pew's exercises of her rights by prohibiting Plaintiff from discussing compensation with her peers or from asking others what Smiths paid them.

168.     Smiths also interfered with Ms. Pew's exercises of her rights protected under the Act by refusing to increase her base pay, refusing to increase opportunities to earn commissions, assigning losses to Ms. Pew which reduced the likelihood she could earn commissions, and by refusing to assign her wins which further deprived her opportunities to earn commissions.

169.     Smiths further violated the Act by refusing to promote Ms. Pew.

170.     Smiths also violated the Act Ms. Pew by putting her on a PIP.

171.     Defendants gave more lucrative job assignments, better base salaries, better commissions, and better job territories to employees that did not complain than it did to Plaintiff.

172.     Smiths also assigned Ms. Pew worse territories and sought to marginalize her so she would fail and not earn commissions.

173.     A reasonable person in Ms. Pew's shoes would be deterred from exercising her rights protected under the Act if she was subject to the retaliatory acts described above.

174.     Defendants retaliated against Plaintiff for complaining about pay discrimination by terminating her employment and concocting a pretextual reason for ending her employment.

175.     Defendants sought to replace Ms. Pew with an employee who had not complained about pay discrimination.

176.     Defendants' actions were willful and malicious, and exhibited callous disregard and reckless indifference to Plaintiff's protected rights.

177.    As a result of Defendants' retaliatory actions, Plaintiff has suffered and will continue to suffer irreparable injury including, but not limited to: lost earnings and benefits, mental anguish, and emotional distress.

### COUNT VII: VIOLATION OF TITLE VII
### Retaliation
### 42 U.S.C. § 2000e–3(a)

178.    Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

179.    Title VII prohibits employers from retaliating against their employees for reporting discriminatory conduct and making good faith complaints of sex discrimination. 42 U.S.C. § 2000e-3(a).

180.    At all relevant times, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of Title VII. 42 U.S.C. § 2000e(b).

181.    At all relevant times, Defendants employed 15 or more employees.

182.    Plaintiff is a member of a protected class on the basis of her sex (female).

183.    Ms. Pew complained on several occasions that she was being gender discrimination. She even filed a complaint on behalf of her peer, an older female saleswoman, that Smiths was underpaying her peer because of her peer's sex.

184.    Smiths retaliated against her for complaining by refusing to increase her base pay, refusing to increase opportunities to earn commissions, assigning losses to Ms. Pew which reduced the likelihood she could earn commissions, and refusing to assign her wins which further deprived her opportunities to earn commissions.

185.    Landgraf and Burress also retaliated by prohibiting Plaintiff from discussing compensation with her peers or from asking others what Smiths paid them.

186.    Smiths further retaliated by refusing to promote Ms. Pew.

187.    Smiths gave Ms. Pew smaller raises than it gave to comparators who did not complain.

188.    Smiths also assigned Ms. Pew worse territories and sought to marginalize her so she would fail and not earn commissions.

189.    Defendants gave more lucrative job assignments, better base salaries, better commissions, and better job territories to employees that did not complain than it did to Plaintiff.

190.    Smiths further retaliated by placing her on a PIP.

191.    Defendants retaliated against Plaintiff for complaining about discrimination by terminating her employment and concocting a pretextual reason for ending her employment.

192.    Defendants sought to replace Ms. Pew with an employee who had not complained about discrimination.

193.    A reasonable person in Ms. Pew's shoes would be deterred from exercising her rights protected under the Act if she was subject to the retaliatory acts described above.

194.    Any proffered reason for Defendants termination of Plaintiff's employment following her internal complaints of discrimination is merely pretextual.

195.    Defendants' actions were willful and malicious, and exhibited callous disregard and reckless indifference to Plaintiff's federally protected rights.

196.    As a result of Defendants' retaliatory actions, Plaintiff has suffered and will continue to suffer irreparable injury including, but not limited to: lost earnings and benefits, mental anguish, and emotional distress.

197.    Exemplary damages are warranted to prevent similar unlawful conduct.

### COUNT VIII: VIOLATION OF IHRA
#### Retaliation
#### <u>775 ILCS 5/6-101</u>

198.    Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

199.    The IHRA prohibits employers from retaliating against an employee for raising good faith complaints of discrimination or harassment. 775 ILCS 5/6-101(A).

200.    At all relevant times, Defendants were employers within the meaning of the Act and Ms. Pew was an employee within the meaning of the Act.

201.    Defendants employed more than one employee in the State of Illinois.

202.    Ms. Pew was an employee within the meaning of the Act.

203.    Ms. Pew complained on several occasions that she was being discriminated against because of her gender and age. She even filed a complaint on behalf of her peer, an older female saleswoman, that Smiths was underpaying her peer because of her peer's sex.

204.    At all relevant times, Ms. Pew performed her work with diligence and was meeting her employers' legitimate expectations.

205.    Smiths retaliated against her for complaining by refusing to increase her base pay, refusing to increase opportunities to earn commissions, assigning losses to Ms. Pew which reduced the likelihood she could earn commissions, and refusing to assign her wins which further deprived her opportunities to earn commissions.

206.    Landgraf and Burress also retaliated by prohibiting Plaintiff from discussing compensation with her peers or from asking others what Smiths paid them.

207.    Smiths gave Ms. Pew smaller raises than it gave to comparators who did not complain.

208.    Smiths also assigned Ms. Pew worse territories and sought to marginalize her so she would fail and not earn commissions.

209. Defendants gave more lucrative job assignments, better base salaries, better commissions, and better job territories to employees that did not complain than it did to Plaintiff.

210. Smiths further retaliated by refusing to promote Ms. Pew.

211. Smiths gave Ms. Pew smaller raises than to comparators who did not complain.

212. Defendants gave more lucrative job assignments, better base salaries, better commissions, and better job territories to those who did not complain than it did to Plaintiff.

213. Smiths further retaliated by placing her on a PIP.

214. Defendants retaliated against Plaintiff for complaining about sex and age discrimination by terminating her employment and concocting a pretextual reason for ending her employment.

215. Defendants sought to replace Ms. Pew with an employee who had not complained about discrimination.

216. A reasonable person in Ms. Pew's shoes would be deterred from exercising her rights protected under the Act if she was subject to the retaliatory acts described above.

217. Any proffered reason for Defendants termination of Plaintiff's employment following her internal complaints of discrimination is merely pretextual.

218. Defendants' retaliatory actions violated the IHRA.

219. Defendants' conduct was willful because they knew or should have understood the obligations and duties of IHRA.

220. Plaintiff has suffered and continues to suffer significant damages due to Defendants' violations of the IHRA, including pain and suffering, emotional distress, physical injury, and mental anguish.

## COUNT IX: VIOLATION OF ADEA
### Retaliation

**29 U.S.C. § 623**

221.    Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

222.    The ADEA prohibits employers from retaliating against employees who opposed or complained about age discrimination. 29 U.S.C. § 623(d).

223.    During all events relevant and pertinent to this action, Defendants were an "employer" within the meaning of the ADEA.

224.    Defendants employed more than 20 employees and they were engaged in interstate commerce.

225.    Ms. Pew was an "employee" within the meaning of the ADEA.

226.    Plaintiff was over the age of 50 during the relevant time of her employment with Defendants.

227.    Ms. Pew complained on several occasions that she was being discriminated against because of her age. She even filed a complaint on behalf of her peer, an older female saleswoman, that Smiths was underpaying her peer because of her peer's sex.

228.    At all relevant times, Ms. Pew performed her work with diligence and was meeting her employers' legitimate expectations.

229.    Smiths retaliated against her for complaining by refusing to increase her base pay, refusing to increase opportunities to earn commissions, assigning losses to Ms. Pew which reduced the likelihood she could earn commissions, and refusing to assign her wins which further deprived her opportunities to earn commissions.

230.    Landgraf and Burress also retaliated by prohibiting Plaintiff from discussing compensation with her peers or from asking others what Smiths paid them.

231.    Smiths further violated the Act by refusing to promote Ms. Pew.

232.   Defendants gave more lucrative job assignments, better base salaries, better commissions, and better job territories to those who did not complain than it did to Plaintiff.

233.   Smiths further retaliated by placing her on a PIP.

234.   Smiths also assigned Ms. Pew worse territories and sought to marginalize her so she would fail and not earn commissions.

235.   Defendants retaliated against Plaintiff for complaining about age discrimination by terminating her employment and concocting a pretextual reason for ending her employment.

236.   Defendants sought to replace Ms. Pew with a younger employee who had not complained about discrimination.

237.   A reasonable person in Ms. Pew's shoes would be deterred from exercising her rights protected under the Act if she was subject to the retaliatory acts described above.

238.   Any proffered reason for Defendants termination of Plaintiff's employment following her internal complaints of discrimination is merely pretextual.

239.   Defendants would not have taken these actions against Plaintiff but for her age.

240.   Defendants' retaliatory actions violated the ADEA.

241.   Defendants conduct was willful because they knew or should have understood the obligations and duties of ADEA.

242.   As a result of Defendants' retaliatory actions, Plaintiff has suffered and will continue to suffer irreparable injury including, but not limited to lost earnings and benefits, pain and suffering, mental anguish, and emotional distress.

### PRAYER FOR RELIEF

243.   WHEREFORE, Plaintiff requests that this Court enter an Order:

A.   Finding that Defendants' actions violated the Illinois Equal Pay Act;

B.      Finding that Defendants' actions violated Title VII;

C.      Finding that Defendants' actions violated the IHRA;

D.      Finding that Defendants' actions violated the ADEA;

E.      Making Ms. Pew whole by an appropriate award of monetary damages, including backpay and/or "the entire amount of any underpayment together with interest" as required under the IL EPA;

F.      Awarding injunctive relief including reinstatement;

G.      Imposing a civil penalty against Defendants pursuant to 820 ILCS 112/30(b)(3) for violations of the IL EPA;

H.      Imposing a civil penalty against Defendants pursuant to 820 ILCS 112/30(c)(3) for violations of the IL EPA;

I.      Awarding compensatory damages;

J.      Awarding punitive damages;

K.      Awarding liquidated damages;

L.      Awarding pre-judgment interest;

M.      Awarding attorneys' fees and costs;

N.      Awarding litigation expenses;

O.      Finding that Defendants' conduct was malicious or willful, and awarding any exemplary damages; and

P.      Awarding Ms. Pew all other relief as the Court deems equitable, just, and/or appropriate.

**JURY DEMAND**

244.    Plaintiff demands a trial by jury on all issues raised in this Complaint.

Dated: December 20, 2022

              Respectfully submitted,
              Teresa Pew

              By:  /s/ Laura R. Feldman_____
                  One of the Plaintiff's Attorneys

The Prinz Law Firm, P.C.
Laura R. Feldman (lfeldman@prinz-lawfirm.com)
Amit Bindra (abindra@prinz-lawfirm.com)
1 East Wacker Drive, Suite 1800
Chicago, IL 60601
P: (312) 212-4450 (main)
P: (312) 530-9762 ext. 512 (L. Feldman)
F: (312) 284-4822

## **CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing to the attorney of record for Defendants via the

Court's CM/ECF system on December 20, 2022.

Dated: December 20, 2022

<div style="margin-left:auto">

Respectfully submitted,
Teresa Pew

By:    /s/ Laura R. Feldman    
          One of the Plaintiff's Attorneys

</div>

The Prinz Law Firm, P.C.
Laura R. Feldman (lfeldman@prinz-lawfirm.com)
Amit Bindra (abindra@prinz-lawfirm.com)
1 East Wacker Drive, Suite 1800
Chicago, IL 60601
P: (312) 212-4450 (main)
P: (312) 530-9762 ext. 512 (L. Feldman)
F: (312) 284-4822